**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL J. BOWSER, individually and as | ) | |
| Administrator for the ESTATE OF MARY | ) | |
| LOU BOWSER, and WILLIAM J. BOWSER, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.  23-0233 |
| v. | ) | Judge Nora Barry Fischer |
| | ) | |
| NATIONWIDE PROPERTY AND | ) | |
| CASUALTY INSURANCE CO., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

**I.  INTRODUCTION**

Plaintiffs, Daniel J. Bowser, individually and as Administrator of his mother's estate (the "Estate") and William J. Bowser, his brother, bring this declaratory judgment action seeking a determination as a matter of law that Plaintiffs are due indemnification for fire loss of the residence insured under a homeowners policy held by their mother, Mary Lou Bowser ("MLB"), and first issued by Defendant Nationwide Property and Casualty Insurance Company ("Nationwide") in 1958. (Docket No. 1-2).[1]  Presently pending are the parties' cross motions for summary judgment. (Docket Nos. 19 and 21). The parties are properly before this Court under its diversity jurisdiction, 28 U.S.C. §§ 1332, the issue has been fully briefed and neither party has requested oral argument.

---

[1] The action was filed in the Court of Common Pleas of Somerset County, Pennsylvania and later removed to the United States District Court for the Western District of Pennsylvania at Johnstown. (Docket No. 20 at 1).  It seeks, with some want of clarity, declaration that: the policy was in force at the time of loss and Nationwide thus has a duty to indemnify Plaintiffs; the named Plaintiffs, individually, also had an insurable interest in the Property; and the policy proceeds should be paid to them in equal shares.  As discussed herein, however, Plaintiffs individually were not parties to the Policy and under the Court's analysis a vested right of indemnification was held by decedent at the time of her death.  The payment to be made pursuant to that right is owed to her Estate.

(Docket Nos. 18-24 and 29-30).[2]  After careful consideration of the parties' positions, and for the following reasons, Plaintiffs' motion for summary judgment (Docket No. 21) is granted in the form of an Order that the Estate of Mary Lou Bowser is contractually entitled to indemnification/payment in the amount of the loss of the insured residence, calculated pursuant to the terms of the homeowners' policy held for approximately 65 years.  Defendant's motion for summary judgment (Docket No. 19) is denied.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

As reflected in Plaintiffs' initial filing (Docket No. 1-2), Defendant's Concise Statement of Material Facts (Docket No. 18), and the parties' other related filings and attachments thereto (Docket Nos. 29-24), the relevant facts (as to which there is little dispute) can be briefly summarized:

Clifford and Mary Lou Bowser purchased and insured their home, located at 3416 Somerset Pike, Johnstown, Pennsylvania (the "Property") in 1958 and continued to reside therein for the remainder of their lives.[3]  Clifford died in August, 2000 leaving his spouse and three children: Daniel, Sharon and William.  In early 2005, Sharon became aware that – for estate planning reasons, including MLB's desire to remain in her home until death and ability to obtain/afford potential long term medical care - it might be best for their mother (then age 74) to transfer legal title to the family home.  *Cf.* Docket No. 20 at 13 (noting that Sharon Bowser performed clerical work at the agency which issued/renewed the Policy).[4]  The family agreed, and

---

[2] At the Court's request, the parties recently provided supplemental briefing on additional relevant case law:  *Nazareth Mut. Ins. Co. v. Pennsylvania Ins. Dep't*, 298 A.3d 140 (Pa. Commw. Ct. 2023), *appeal denied*, 308 A.3d 777 (Pa. 2023).  (Docket Nos. 29-30).

[3] The home was insured under a Nationwide homeowners insurance policy, # 58 37 HR 163454 (the "Policy"), that remained in place thereafter.  The policy limits applicable to the insured home were $271,600. (Docket No. 1 at 1-2).

[4] The parties' recent discovery is necessarily limited regarding the extent, if any, to which advice or information regarding a transfer of legal title may have passed between the agency/an agent of Nationwide and Ms. Bowser prior

in October, 2005 MLB executed a special warranty deed in favor of her children as joint tenants with rights of survivorship. Docket No. 22 at 2; Docket No. 18-1.[5]

The transfer of legal title was made by said family members' oral agreement, and with their understanding and intent that it would facilitate MLB's desire to continue to live as she was, preserve her assets for her children and transfer them at death with minimal probate burden. For more than 17 years thereafter, the relevant circumstances remained unchanged. MLB continued to live independently in and to care for her own home; she continued to pay all related utility costs, taxes, maintenance/repairs and Policy insurance costs.[6] When she began to require assistance with the necessary administrative tasks of daily life, her eldest son, Daniel, through his Power of Attorney, provided support, including with her billings/banking; but all expenditures related to the Property continued to be paid entirely by MLB.[7]

In 2011, the Property incurred a small insured loss related to tree damage, the claim for which was submitted to Defendant by MLB and paid. On October 5, 2022, Sharon predeceased her mother. Less than four months later, on January 27, 2023, MLB (then age 92) lost her life to

---

to her death in 2022. *Cf.* Docket No. 20 at 12 ("[Nationwide's Agent] stated unequivocally [in deposition] that his Agency was never informed of the change of ownership and no evidence exists to the contrary.").

[5] *Cf.* Docket No. 30 at 3 (asserting that MLB "unquestionably relinquished and transferred ownership of her property" and did so "with the assistance of counsel"). As Defendant provides no further detail or record citation, it is unclear whether Defendant refers to the preparation and recording of a deed as opposed to, *e.g.*, professional tax or estate planning advice. *Cf.* Docket No. 18-1 (2005 Deed, with Notice of risk of subsidence executed by "Attorney for Grantees"). The Court notes the presence of this fact question while finding it immaterial to its conclusion. *Cf.* n. 7, *infra*.

[6] MLB did not notify Defendant of her execution of this deed nor, as discussed in Section V, *infra*, was she required to do so under the Policy's notice provision(s).

[7] In other words, and as discussed *infra*, MLB and her children divided the legal and equitable title to the Property, *i.e.*, they intentionally created, and MLB maintained, a life estate in her home. *See* Docket No. 22 at 3 (recounting Daniel Bowser's testimony that the family's intention was to leave a "life estate" though they were not familiar with the legal term). It is not surprising then that the record reflects no related writing of notice or inquiry regarding MLB's existing homeowners insurance. *Cf.* Docket No. 20 at 3 (noting that MLB's children would not "have qualified as insureds or additional insureds under the Nationwide policy as they did not live there"). *Cf. also* Section V, *infra*.

3

the fire that engulfed her home. Shortly thereafter, Defendant issued payment in the amount of approximately $54,000 pursuant to the Policy's personal property coverage. (Docket No. 20 at 6). By letter of April 5, 2023, Defendant denied, however, coverage for the residence itself under the Policy on grounds that MLB had sold her home and therefore had no "insurable interest" in it at the time of loss.[8]

Defendant's current position, advanced in its pending motion for summary judgment, is set forth as: "At the time of her death, neither [MLB] nor her Estate had an interest [under the policy] as to the dwelling as [MLB] had not owned the property after 2005" and "[w]hile [MLB] did have an insurable interest during the time she lived at the property, that interest ceased at the time of her death." (Docket No. 20 at 4). Defendant's brief in support elaborates the following four grounds for its denial: (a) the individual Plaintiffs are not insureds and have no right to personally recover Policy proceeds; (b) the Policy required that MLB notify Nationwide if she transferred title/ownership and she did not, thus no dwelling coverage was owed; (c) the Policy insured the Property only while occupied by the insured as owner, for dwelling purposes, and MLB was no longer the owner;[9] and (d) MLB possessed an insurable interest in the Property which was solely a right of occupancy and enjoyment that expired upon her death, and thus she suffered no insured loss. *See generally,* Docket No. 20.

In contrast, Plaintiffs' pending motion asserts, most importantly, that the 2005 transfer of legal title from MLB to her children occasioned no increased risk to Defendant under the Policy and thus no notice was required, MLB continued to reside in her home as equitable life estate

---

[8] *See* Docket No. 1-2 at ¶ 10 and Exhibit 6. The denial letter states that because the Property was sold in October, 2005, MLB "did not have insurable interest in the residence premises and coverage for this portion of the claim is denied." (Docket No. 1-2 at 64-65). *Compare* Docket No. 30 at 2 ("Nationwide did not dispute that Mrs. Bowser had an insurable interest in the real property . . . .").

[9] *See also* Docket No. 30 at 2-3 ("[Defendant's] Answer and Affirmative Defenses . . . were based on policy conditions related to ownership and residency.").

owner of the Property, and the Policy was in force when the home was destroyed by fire.  With

this, the Court largely concurs.  *See generally* Docket No. 22.

### III.  RELEVANT POLICY PROVISIONS

The Policy issued by Nationwide and held by MLB includes the following provisions, upon

which Defendant relies for its contested denial and which are pertinent to the Court's analysis:

AGREEMENT

We will provide the insurance provided in this policy, which includes the
Declarations and attached endorsements or schedules, in return for the
premium and fees, and compliance with all applicable provisions of this
policy.

*****
You have a duty to notify us as soon as possible of any change which may affect
the risk under this policy. This includes, but is not limited to, changes:

> (1) in the title/ownership of the "residence premises"; or
> (2) in the occupancy or use of the "residence premises".

Section I – PROPERTY COVERAGES

A. Coverage A – Dwelling

1. We cover: a. The dwelling on the "residence premises" shown in the
Declarations, including structures attached to the dwelling;

*****

Section I – CONDITIONS

*****

D. DUTIES AFTER LOSS - In case of a loss to covered property, we have no duty
to provide coverage under this policy if you or an "insured" seeking coverage fails
to comply with the following duties:

1. Give prompt notice to us or our agent…

*****

I. DEATH - If you die, the following applies:

     1. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death (emphasis added); and

\*\*\*\*\*

R. DWELLING - We insure the dwelling, as described in the Declarations of this policy, only as the "residence premises", while occupied by the "insured" as the owner, for dwelling purposes and not otherwise. (emphasis added). This condition applies, at the time of loss to Coverage A – Dwelling, Coverage B – Other Structures and C. Coverage C – personal property as provided by this contract.

\*\*\*\*\*

(Docket No. 20 at 4-7) (quoting Policy provisions); *see also* Docket No. 18.

### IV.  APPLICABLE STANDARDS OF REVIEW

### A.  General Summary Judgment Standard

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party,[10] the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(a) & (c)(1)(A).  Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof.  *Id*.  Once that burden has been

---

[10] *See e.g.*, *Watson v. Abington Twp.*, 478 F.3d 144, 147 (3d Cir. 2007) (noting that the court must interpret the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor).

met, the nonmoving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting FED.R.CIV.P. 56(e)) (emphasis added by *Matsushita* Court).

An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.*, 477 U.S. 242, 248 (1986). In *Anderson*, the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. . . . [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id*. at 249-50 (internal citations omitted). *See also McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

### B.  Duty to Indemnify

"In actions arising under an insurance policy, [Pennsylvania] courts have established a general rule that it is a necessary prerequisite for the insured to establish that his claim falls within the coverage provided by the insurance policy." *Erie Ins. Grp. v. Catania*, 95 A.3d 320, 322 (Pa. Super. 2014) (citing *McEwing v. Lititz Mut. Ins. Co*., 77 A.3d 639, 646 (Pa. Super. 2013)). It is the function of the Court to interpret an insurance contract. *Amer. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 320 (3d Cir. 2011); *Whole Enchilada, Inc. v. Travelers Prop. Cas. Co. of Am*., 581 F. Supp. 2d 677, 689 (W.D. Pa. 2008). "The goal of that task is, of course, to ascertain the intent of the parties as manifested by the language of the written instrument." *Standard Venetian Blind Co. v. Am. Empire Ins. Co*., 469 A.2d 563, 566 (Pa. 1983).

A court must first "read the policy as a whole and construe terms according to their plain meaning." *Vitamin Energy, LLC v. Evanston Ins. Co*., 22 F.4th 386, 392 (3d Cir. 2022). "Words of common usage must be 'construed in their natural, plain, and ordinary sense . . . .'" *Amer. Auto. Ins. Co*., 658 F.3d at 320 (quoting *Melrose Hotel Co. v. St. Paul Fire & Marine Ins. Co*., 432 F. Supp. 2d 488, 495 (E.D. Pa. 2006) (citing *Madison Constr. Co. v. Harleysville Mut. Ins. Co*., 735 A.2d 100, 108 (Pa. 1999)).[11]   "Where the language of an insurance policy is clear and unambiguous, a court must enforce that language." *Amer. Auto. Ins. Co.*, 658 F.3d at 321; *see also Pennsylvania Manufacturers' Ass'n Insurance Co. v. Aetna Casualty & Surety Insurance Co*., 233 A.2d 548, 551 (Pa. 1967).  And "[w]here a provision of a policy is ambiguous, [it] is to be construed in favor of the insured and against the insurer, the drafter of the agreement." *Standard Venetian Blind,*, 469 A.2d at 566; *see also Gardner v. State Farm Fire & Cas. Co*., 544 F.3d 553, 558 (3d Cir. 2008).

## V.  ANALYSIS

### A.  Absence of Any Individual Right of Recovery

The Court concurs with Defendant's observation that neither Daniel nor William Bowser was an insured under the Policy held by their mother, and neither has any right to personal recovery of proceeds due thereunder.  *See* Docket No. 20 at 10-11 ("As the Court stated in *Kantz v. Everett Cash Mut. Ins. Co.*, 192 A.3d 217 (Pa. Super. Ct. 2018), the insurance policy protects the personal interest of the insured in the property and not the property in general."); *Guardo v. Buzzuro*, 1905 EDA 2017, 2018 WL 3133679, at *3 (Pa. Super. Ct. June 27, 2018) ("Property ownership . . . is

---

[11]  *See also* **Allstate Vehicle & Prop. Ins. Co. v. Scott**, 450 F.Supp.3d 230, 236–37 (N.D.N.Y. 2020) ("Contract language is unambiguous if it 'provides a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself and concerning which there is no reasonable basis for a difference of opinion.'") (quoting *Atl. Cas. Ins. Co. v. Value Waterproofing, Inc*., 918 F. Supp. 2d 243, 253 (S.D.N.Y. 2012), *aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co.*, 548 F. App'x 716 (2d Cir. 2013)).

of minimal importance in determining entitlement to the proceeds of insurance, since the nature and extent of various rights and obligations of the parties are governed by the terms of the insurance contract.") (citing *McDivitt v. Pymatuning Mutual Fire Ins. Co.*, 449 A.2d 612 (Pa. Super. 1982)).[12] As explicated below, MLB's right of recovery now lies with the Estate, a Plaintiff represented in this action by Daniel Bowser in his capacity as Administrator.

### B.  Insured's Breach of the Policy's Notice Provision

The first of "two policy conditions" expressly relied upon by Defendant is the insured's "duty to inform Nationwide of any change of ownership as set out in the policy AGREEMENT". Docket No. 20 at 11-13.  As set forth in Section III, *supra*, the Policy provision cited requires an insured to notify Nationwide "of any change *which may affect the risk* under this policy", including changes "in the title/ownership of the 'residence premises'". (Docket No. 20 at 4-5) (emphasis added).  Defendant acknowledges this clause but dismisses it out of hand by hypothesizing that the change in legal title could have affected its risk.  (Docket No. 20 at 12-13) (asserting that an argument "that the failure to notify Nationwide of the change in ownership did not 'affect the risk under the policy'" is "without merit" because it "may or may not have influenced" Nationwide's coverage decisions).[13]

---

[12] *Cf. Excelsior Insurance Co.*, 74 A.D.2d 436, 438, 428 N.Y.S.2d 95, 96 (1980) (son who received transfer of title with understanding of parents' continued residence in home may have had insurable interest at time of fire, but was not a party to insurance contract and had no rights to policy proceeds); Docket No. 24 at 4 ("As there was no opposition to Nationwide's position that the individual Plaintiffs, Daniel J. Bowser and William J. Bowser had no rights under the Nationwide policy, that issue will not be addressed.").

[13] Defendant also asserts that this provision unambiguously grounds its denial.  The Court must disagree.  *Compare, e.g., Bemis v. Harbor Creek Mut. Fire Ins. Co. of Erie*, 49 A. 769, 768 (1901) (policy held void by conveyance of insured property by warranty deed where contract provided that *"entire policy*, unless otherwise provided by agreement indorsed hereon or added thereto, *shall be void if any change*, other than by the death of the insured, *take place in the interest, title, or possession of the subject* of insurance (except change of occupants, without increase of hazard), whether by legal process or judgment, or by voluntary act of the insured, or otherwise.'"); *Hill v. Cumberland Val. Mut. Prot. Co.*, 59 Pa. 474, 475 (1868) (executory contract with partial payment made but no deed of transfer prior to loss did not void insurance where policy provided that "*any transfer of interest in this policy, or any part thereof*, either by sale or otherwise; *or if the property herein insured, or any part of it, shall be transferred by any*

9

In the circumstances of this case and without more, however, the filing of the deed – made with the parties' intentional recognition of MLB's retained interest as equitable life estate owner and occupant of her home (an agreement and *status quo* maintained for the remainder of her life) – did not alter the risk to Nationwide. It therefore triggered no notice requirement under either the generally applicable terms of the Policy "Agreement" or the repetition of those breach of contract terms in Policy Section I (D) regarding Duties After Loss to "covered property". *See* Section III, *supra*. *Cf.* Docket No. 20 at 7, 12; Docket No. 24 at 9.[14]

The Commonwealth Court of Pennsylvania has held that an estate planning transfer of legal title of a residence from parents to their children that does not alter the insured parents' continued possession, residence in/use of, or maintenance of the property as owners is not material to the acceptance of risk or hazard assumed by the insurer. *See Nazareth Mut. Ins. Co. v. Pennsylvania Ins. Dep't*, 298 A.3d 140 (Pa. Commw. Ct. 2023), *appeal denied*, 308 A.3d 777 (Pa. 2023) (insurer alleged misrepresentation – by failure to disclose transfer - as basis to exclude claim for fire loss and cancel policy but did not describe how transfer of property to family trust was material to assumed risk; Court found transfer immaterial).

The Court finds the *Nazareth*'s Court's analysis, as highlighted by Defendant, informative: As Defendant observes, in *Nazareth* a wealthy family, with the benefit of sophisticated tax and estate planning counsel, created both a family trust and an "irrevocable asset protection sub-trust which was designed to limit the use of principal for the [parent]'s benefit and avoid a governmental

---

contract or any change of partnership or ownership*, whether prior or subsequent to any loss or damage", without written consent, would render it void).

[14] The Court notes – as an apparent inconsistency in Defendant's position not material to the Court's analysis – that despite referencing the Policy provisions conditioning coverage in general (as well as coverage on the Property in particular) on compliance with its increased-risk notice requirement, Defendant paid the personal property claim, asserting only that its Property coverage was void.

spend-down of the estate before eligibility for government entitlement programs", yet the insureds – having executed the requisite deed and placed the insured residence in said irrevocable trust – "believed that the transfer of the property would not take place until after [their deaths]." Five months after the property's loss to fire, insurer denied the claim made by parents, as insureds, for want of ownership on the basis of its transfer to the trust; subsequent thereto, Defendant issued a retroactive cancelation/non-renewal letter on the same ground. The Pennsylvania Court rejected the insurer's bases for denial and cancelation. And in doing so it noted both (a) the insured couple's failure to fully appreciate the title and timing of transfer details of their execution/recording of a deed for tax/estate purposes while otherwise retaining their lifetime *status quo* and (b) the absence of any effect on the insurer's risk. (Docket No. 30 at 3-4) (discussing *Nazareth Mut. Ins. Co. v. Pennsylvania Ins. Dep't*, 298 A.3d 140 (Pa. Commw. Ct. 2023), *appeal denied*, 308 A.3d 777 (Pa. 2023)).

### C. Insurance Coverage of Owner-Occupied Residence Premises

As set forth in Section III, *supra*, the second Policy provision cited by Defendant specifies that the subject property is insured "only as the 'residence premises', while occupied by the 'insured' as the owner, for dwelling purposes and not otherwise." Docket No. 20 at 4-5. Defendant does not dispute its insured's continued residence in her home but asserts that, having transferred title to her children in 2005, she was no longer occupying it as "owner".

To the contrary, however, at the time of loss, MLB held an ownership interest in the form of the equitable life estate she retained on transfer of legal title to her children.[15] *See Nazareth,*

---

[15] The Court notes that the term "Owner" is not more narrowly defined in the policy as, *e.g.*, the owner of legal title. Moreover, the Policy's employment of a slash in its provision requiring notice of increased risk resultant from changes "in the title/ownership of the 'residence premises'" above suggests that the Policy/its drafters recognized a distinction between them. A slash is traditionally used to indicate that either of two things (usually in a close (but not synonymous) relationship, as here, or in opposition) are considered applicable alternatives, *i.e.*, the reader should choose the most apt.

298 A.3d at 151 (noting that policy did not define term "owner" and insured retained rights and life estate interest in property); *Nazareth Mut. Ins. Co. v. Pennsylvania Ins. Dep't*, 299 A.3d 185 (Pa. Commw. Ct. 2023) (noting that although they "may not have been title owners following execution and recording of the Deed", parents retained ownership of important property rights, continued to reside at the Property as their primary residence and paid all utilities, taxes, insurance and maintenance). *See also Luchansky v. Farmers Fire Insur. Co.*, 515 A.2d 598 (Pa. Super. 1986) (reversed/remanded for determination of fire loss with holding that family agreement providing parents' retention of equitable interest was not subsumed by their transfer of title to son);[16] *id.* at 601 (noting that during post-conveyance period (a) parents paid insurance premiums, and kept the premises insured, in repair and leased; (b) son, the legal title holder, did not purchase separate fire insurance protection, and (c) "when appellants purchased insurance protection they . . . were insuring against the loss of their own interest, an insurable interest, in the home whose legal title they had conveyed to their son").[17]

---

[16] *Cf. id.* (noting that agreements of sale "will not merge in a deed of conveyance if the intention of the parties is otherwise or where the stipulations in the contract sought to be enforced are collateral to the functions performed by the deed"); *id.* (further noting that litigation "was not an action to enforce the provisions of the agreement" by its parties - who had never disputed it).

[17] The *Luchansky* parents transferred legal title to their property to their son by deed in 1975 (to facilitate a mortgage loan with proceeds used for their support) in agreement that it would be held on their behalf and eventually reconveyed, and parents would continue to hold "equitable title or interest", obtain rental income from college students, retain the net proceeds for their support, pay costs/insurance/taxes and make repairs. In 1982, prior to reconveyance, the property burned in a fire and the trial court denied recovery for want of an insurable interest in the parents. As noted in text above, the Superior Court reversed, concluding that parents had an insurable interest notwithstanding transfer of legal title by deed. It further noted, moreover, that "[t]hese facts were sufficient to establish beyond peradventure that the parents, even if they held neither 'legal' nor 'equitable' title to the home, were in a position in which they derived a benefit from the property's existence and would suffer a loss from its destruction." *Id.* at 600. Because the parents survived their loss and the Court held the policy in force at the time, no further parsing of their interest was needed.

*Cf. Etterle*, 74 A.D.2d 436, 428 N.Y.S.2d 95 (1980) (cited in *Luchansky, supra*) (reversing/remanding grant of motion to dismiss where parents conveyed title to son with oral agreement that they would continue to live in home; parents had insurable interest and could recover when property was damaged by fire); *id.* (further noting that "if any dispute arose between the parents and their son, all requirements for imposing a constructive trust appear to exist so that [son] would be deemed to hold the property as a trustee in favor of his parents"); *cf. also Berry v. Am Cent. Ins. Co. of St. Louis*, 132 N.Y. 49, 57, 30 N.E. 254 (1892) (cited in *Etterle* with observation that "[e]ven though the father [in *Berry*]

In the present case, Plaintiffs' uncontroverted testimony, together with the parties' unbroken course of performance, establishes their agreement that MLB would continue to own a full possessory interest in her house during her lifetime. In keeping with that agreement, MLB's ongoing residence in the property was not dependent upon her children's consent but was an exercise of her retained right to possess the property during her lifetime.[18] Thus, Defendant's objection to coverage on the ground of non-ownership is not well-founded. Rather, the Court holds that under the caselaw discussed above, and the principle that insurance contracts are to be construed to uphold the parties' reasonable expectations, at the time of the loss MLB occupied the premises "as the owner, for dwelling purposes".[19]

## D. Insured Interest Expired at Death

As explicated above, Defendant's duty to indemnify/provide coverage for loss of the Property under the subject Policy was not rendered void by either (a) MLB's failure to notify

---

may not have been able to enforce the right to use the property against his son because of the parol nature of the agreement, the court held that the father [had] an insurable interest."); *Redfield v. Holland Purchase Ins. Co.*, 56 N.Y. 354, 357 (1874) (*cited in Etterle*, 74 A.D.2d at 439 with observation that: "[T]he plaintiff has occupied and worked a farm, although his wife held legal title to the property. Apparently there was an oral promise that plaintiff could have a life estate in the property. The court held that if the plaintiff had an equitable right to the possession of the land under a parol agreement, he had an insurable interest in the property.").

[18] The Court notes that under Pennsylvania's Statute of Frauds, an estate in land (such as MLB's putative life estate) may only be created by a signed writing. 33 Pa. S. § 1. However, it is significant that MLB's life interest was not newly created and conveyed to her, but rather was retained by her as a matter of trust and confidence in her conveyance of the legal title to her children. In such a case, the Statute provides that "where any conveyance shall be made of any lands or tenements by which a trust or confidence shall or may arise or result by implication or construction of law, . . . , then and in every such case such trust or confidence shall be of the like force and effect as if this act had not been passed." 33 Pa. S. § 2. Moreover, even where it is otherwise applicable, the Statute does not bar enforcement of an oral agreement for creation of an estate in land where (as here) it is "renounced or waived by the party entitled to claim its protection", or where (also as here) "continuous and exclusive possession was taken under the contract *and* . . . other equitable considerations make it impossible to do justice save by specific performance". *Haskell v. Heathcote*, 69 A.2d 71 (Pa. 1949). *Cf.* n. 16, *supra.*

[19] Having so concluded, the Court need not assess possible additional bases for its holding, such as Defendant's constructive notice of the transfer of legal title. *See, e.g., Wagner v. Knapp*, No. 1191 MDA 2013, 2014 WL 10788859, at *5 (Pa. Super. Ct. Oct. 14, 2014) ("For centuries, Pennsylvania law has provided that recording of a deed places all on notice to its contents.") (citing *Weik v. Estate of Brown*, 794 A.2d 907, 910 (Pa.Super.2002)); *Gunder v. Yost*, No. 224 MDA 2016, 2016 WL 5266627, at *3 (Pa. Super. Ct. Sept. 22, 2016) (citing *Salter v. Reed*, 15 Pa. 260, 263 (1850)).

insurer of an estate planning transfer of legal title from parent to children which did not plausibly increase insurer's risk, or (b) insured's continued residence in and exercise of financial/caretaking responsibilities for her home as an equitable life estate owner.  That being so, the Policy was in place at the time of the insured's death, she suffered an *inter vivos* loss, her right to recover was vested, and passed to her Estate as a chose in action upon her death.[20]  Accordingly, payment under the Policy terms is to be made.[21]

Defendant proffers, as a final basis for its denial, that MLB held an insured interest – but only as someone who "derived pecuniary benefit from . . . [the Property's] existence" through a right of residence and enjoyment "during the time she lived at the property" – a right which by its nature "ceased at the time of her death".  And it further asserts that MLB, having died in the fire, suffered no loss.  Having rejected the first assertion,[22] the Court need not engage the second longer

---

[20]  *Guardo*, 2018 WL 3133679, at *3 ("[W]hen, during Decedent's lifetime, the premises was destroyed by fire, Decedent's interest in, and entitlement to, the insurance proceeds resulting from the insured loss attached. When Decedent died before the insurer issued payment, her personal interest in those proceeds passed to her estate."); *id.* at *4 (noting the "well-settled legal fiction that an estate stands in the shoes of a decedent"). C*f. generally,* Pennsylvania's Survival Statute, 42 Pa. C.S. § 8301; Pennsylvania's Probate, Estates and Fiduciaries Code, 20 Pa. C.S.A. § 301.

[21]  *Cf.* Docket No. 20 at 16 (Defendant's summation of its position in support of summary judgment):

> [T]he reason that The Estate of Mary Lou Bowser was not paid for the damage to the dwelling, is Nationwide's policy language which indicates first, that the insured is required to advise Nationwide of *any change* in ownership; and second, that the coverage for the dwelling is contingent on its use *by the insured as an owner* of the property and its use as a residence premises. No notice was given to Nationwide of the change in ownership. *Simply put,* the Nationwide policy, pursuant to policy conditions did not protect any interest of Mary Lou Bowser in the real property at the time of the fire since *she no longer owned the property*.

*Id.* (emphasis added).

[22]  The Court has concluded that decedent retained an insurable interest in the form of equitable life estate ownership/title in her residence.  It further observes, however, that even in asserting that she held only a pecuniary interest, Defendant appears to under-appreciate MLB's expectations of benefit from the Property's preservation (as by, *e.g.*, enabling her to pass that primary asset on to her children after death) and her assumption of responsibility for its care. As the *Luchansky* Court paused to note:

> The general rule is that anyone has an insurable interest who derives pecuniary benefit or advantage from the preservation or continued existence of the property or who will suffer pecuniary loss from its destruction. 43 Am.Jur.2d *Insurance* § 943; 4 Appleman, *Insurance Law and Practice* § 2123; *Couch on Insurance* § 24:13. A "[r]easonable expectation of benefit from preservation of the

14

than to note its irrelevance under this holding.  That is, even if the Court were to credit Defendant's apparent position that MLB somehow predeceased – as a result of the heat of the fire which consumed her home – the occurrence of a "loss" to her home, which as a matter of incontrovertible logic the Court does not,[23] the right of recovery would merely have vested directly in her Estate under the Policy's own fairly standard "Death" provisions set forth in Section III, *supra* (quoting Policy language which continues to "insure the legal representative of the deceased . . . with respect to the premises and property of the deceased covered under the policy at the time of death and, in accordance with Pennsylvania law, insurance continues for the later of the policy period or 180 days after insured's death.")

---

property is thus sufficient." 4 Appleman, *Insurance Law and Practice* § 2123. "It is not necessary to constitute an insurable interest that the interest be such that the event insured against would necessarily subject the insured to loss; it is sufficient that it might do so, and that pecuniary injury would be the natural consequence." 43 Am.Jur.2d *Insurance* § 943.

[S]ince the requirement of an insurable interest arose merely to prevent the use of insurance for illegitimate (gambling) purposes, it should not be extended beyond the reasons for it by an excessively technical construction. And a right of property is not an essential ingredient of insurable interest; any limited or qualified interest, whether legal or equitable, or any expectancy of advantage, is sufficient. It does not matter in what way such benefit arises or the reason loss would occur thereby, limited presumably by dictates of public policy—if such benefit would be lost by destruction of the subject matter, that interest is insurable.

Thus, it may safely be said that a fee title is clearly not required of the insured, nor even a direct property interest, the test of exposure to financial loss being all important. An equitable title or interest or other qualified property right would clearly be sufficient.... And a person who has made himself responsible for property may insure it against loss.

4 Appleman, *Insurance Law and Practice* § 2123.

515 A.2d at 599.  *See also Etterel,* 74 A.D.2d 436, 438 (noting that an "insurable interest" is "deemed to include any lawful and substantial economic interest in the safety or preservation of property from loss, destruction or pecuniary damage").

[23]  The Death Certificate of record reflects that Mrs. Bowser died in her home of "Thermal Injuries" due to the "Residential Structure Fire"  that wholly consumed it, her time of death thus being necessarily imprecise, and she was pronounced dead at 3a.m. the following morning.  (Docket No. 22-3) (Death Certificate No. P 29456842).  An assertion that where an insured's undeterminable moment of death occurred sometime during (prior to the extinguishment of) or after the fire which caused it, she suffers no recoverable loss, would be untenable.

## VI.  CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (Docket No. 21) is granted in the form of an Order that the Estate of Mary Lou Bowser is contractually entitled to indemnification/payment in the amount of the loss of the insured residence, calculated pursuant to the terms of the homeowners' policy held for approximately 65 years.  Defendant's motion for summary judgment (Docket No. 19) is denied.

An appropriate declaratory judgment Order will be entered.


By the Court:


*s/Nora Barry Fischer*
Nora Barry Fischer
Senior U.S. District Judge

Dated:  February 12, 2025

cc/ecf:  All counsel of record

16